UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**BRITTINEE WASHINGTON,**

   Plaintiff,

v.                                       **No. 4:21-cv-871-P**

**NATIONAL OILWELL VARCO, L.P.,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant National Oilwell Varco, L.P.'s ("NOV") motion for summary judgment. ECF No. 25. Having reviewed the motion, related docket entries, counsel's arguments, and applicable law, the Court **GRANTS** the motion.

## BACKGROUND

This is an employment discrimination case. In March 2019, NOV hired Plaintiff Brittinee Washington,[1] a black woman, to work in an administrative capacity under project manager Garrett Wojcik. ECF No. 31 at 2, 4. Washington and Wojcik worked well together until June 2019 when NOV downsized and cut costs by offering employees a Very Early Retirement Package ("VERP"). *Id.*; ECF No. 31 at 2. A few employees from NOV's spare parts division accepted the VERP and retired, prompting the operations director to ask if Washington and a fellow white employee would temporarily assist in the spare parts division. ECF Nos. 26 at 4; 31 at 3. Washington inquired whether the additional responsibilities would come with a pay raise, but NOV said no. ECF No. 31 at 3. In response, Washington asked for time to think about whether to take on the additional responsibilities. *Id.* According to Washington,

---

[1] Because Washington's first name is spelled inconsistently in the filings before the Court, the Court spells Washington's name as it appears in her complaint. *See* ECF No. 1.

this was the moment various NOV employees began retaliating against her, starting with Wojcik. *Id.*

Washington filed a series of complaints with the NOV human resources department. Her first complaint asserted that Wojcik yelled at her and made her cry after she asked for time to think about whether to accept the temporary position in the spare parts division. ECF No. 27-1 at 30–32. The next day, Washington filed a second complaint because an NOV employee canceled her scheduled training, allegedly at Wojcik's direction. ECF Nos. 26 at 5; 27-1 at 30–32. Two days later, Washington filed a third complaint, this time alleging that Wojcik moved "a Caucasian employee from another area to [share her] office," thus subjecting her to surveillance that Washington contends non-black employees did not endure. The third complaint also stated that Wojcik wanted Washington to move to an office next to an NOV employee who Washington alleges was "discriminatory towards black women" because the employee did not talk to Washington.[2] ECF Nos. 31 at 19; 27-1 at 26–33.

After Washington filed her third complaint, NOV Director of Human Resources discussed the three complaints with Washington and investigated her claims. ECF No. 27-7 at 363. The Director observed that Washington refused to speak with Wojcik, and she was "unable to provide any tangible evidence of discrimination or retaliation." ECF No. 27-8 at 378, 381–84. The Director then recommended that Washington be transferred to the spare parts department within NOV, just as Wojcik asked Washington to do weeks before. ECF No. 27-7 at 363.

Washington was uncooperative during the transition to the new department and continued to complain about—and refused to speak to— Wojcik. ECF No. 27-7 at 371–72. She also requested to take off work nearly every Monday and Friday for three consecutive months. ECF No. 27-7 at 374–75. To remedy the situation, NOV decided to transfer Washington to the shipping department so that she no longer reported

---

[2] Washington later testified that the employee called her a derogatory and racist name, but that information was not in Washington's third complaint, nor did she reference that incident at any point before her deposition. *See* ECF No. 27-1 at 33.

2

to Wojcik. ECF Nos. 27-3 at 244; 27-8 at 383. She received the same pay as her prior position (ECF No. 27-8 at 383), but Washington views the transfer as a demotion because she was required to perform some manual labor (ECF No. 31 at 6). NOV never replaced Washington's position any time after she was transferred to a new division. ECF No. 27-7 at 363, 377.

A few weeks into her position in the shipping department, Washington filed her fourth complaint with NOV human resources, contending that she should have received an increase in pay when she changed jobs. ECF No. 27-1 at 39–40. Two days later on October 23, 2019, Washington filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting claims of racial and gender discrimination. ECF No. 27-2 at 185–86. EEOC issued Washington a right-to-sue letter on October 30, 2019, which stated that Washington must sue "**WITHIN 90 DAYS**" of receiving the letter or she would lose her right to sue based on that charge. *Id.* at 188 (emphasis in original).

Throughout November 2019, Washington continued to notify human resources of various incidents that occurred during the workplace, but she did not file any more official complaints. ECF Nos. 27-8 at 383–84; 26 at 10; 31 at 8. On December 5, 2019, Washington complained that she did not have a "safety mat" for her workstation unlike her non-black coworkers, which was the straw that broke the camel's back. ECF No. 27-1 at 56. Because of Washington's constant complaining, NOV Vice President Cassie Pratt met with NOV's Senior Human Resources Director, Director of Human Resources, and in-house labor counsel, all three of whom are black women, to discuss whether to terminate Washington's employment. ECF No. 27-6 at 360–61. The women agreed that Washington should be fired because of her "rank insubordination" and because her "continuous bad faith complaints" violated NOV policy. *Id.* at 360. Washington was fired later that day. *Id.*

Washington filed a second charge of discrimination with the EEOC on February 12, 2020, asserting that NOV retaliated against her for filing her first EEOC charge. ECF No. 27-2 at 194. The second charge

mentioned nothing about racial or gender discrimination. *See id.* She received her second right-to-sue letter on April 22, 2021. *Id.* at 195.

Washington then filed this suit, asserting racial and sex discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, racial and gender discrimination claims under 42 U.S.C. § 1981, a retaliation claim under Title VII, and a Texas state law claim for intentional infliction of emotional distress ("IIED"). ECF No. 1 at 6–9. After discovery, NOV moved for summary judgment on all claims. ECF No. 25.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law" are material and "will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When evaluating a motion for summary judgment, the Court construes all facts in the light most favorable to the nonmovant and draws reasonable inferences in the nonmovant's favor. *In re Deepwater Horizon*, No. 21-30573, 2022 WL 40006944, at *3 (5th Cir. Sept. 2, 2022). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (internal quotation omitted). Self-serving evidence can create a genuine issue of material fact so long as the evidence is "made on personal knowledge" and "particularized, not vague or conclusory." *Id.* at 160–61 (internal quotation omitted).

## ANALYSIS

### A. Title VII

Title VII prohibits employment discrimination based on race and sex, among other things. *See* 42 U.S.C. § 2000e, *et seq.* Before suing under Title VII, a plaintiff must exhaust her administrative remedies. *Ernst v.*

4

*Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). This means that the plaintiff "must file a timely charge with the EEOC and then receive a notice of the right to sue." *Id.* After receiving a right-to-sue letter from the EEOC, the plaintiff must sue within 90 days or risk dismissal of her claim. *See* 42 U.S.C. § 2000e-5(f)(1); *Ringgold v. Nat'l Maint. Corp.*, 796 F.2d 769, 770 (5th Cir. 1986).

Washington does not address NOV's contention that her Title VII sex and race discrimination claims are untimely. *Compare* ECF No. 26 at 14–15 *with* ECF No. 31 at 12. Washington received the first right-to-sue letter, which addressed her allegations of discrimination, on October 30, 2019. The letter explicitly states that her lawsuit "**must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**, or [her] right to sue based on th[at] charge will be lost." ECF No. 27-2 at 188 (emphasis in original). Washington did not sue until nearly two years later, well beyond the 90-day deadline. ECF No. 1. Her Title VII sex and race discrimination claims are therefore time-barred, and the Court grants summary judgment for NOV on these two claims. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379–80 (5th Cir. 2002).

**B. 42 U.S.C. § 1981**

"Section 1981 [of Title 42] generally forbids racial discrimination in the making and enforcement of private contracts, including private employment contracts . . . ." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) (collecting cases). As an initial matter, "no court has held that allegations of gender based discrimination fall within [§ 1981's] purview." *Id.*; *see Runyon v. McCrary*, 427 U.S. 160, 167 (1976). The Court accordingly grants NOV summary judgment on Washington's gender discrimination claim asserted under § 1981. ECF No. 1 at 8.

Continuing with Washington's § 1981 race discrimination claim (ECF No. 1 at 6–7), "a plaintiff's claims of unlawful discrimination are analyzed using the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973),] burden-shifting framework" when the claim is based on circumstantial evidence, like Washington's claim. *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 305 (5th Cir. 2020) (citing *Rogers v.*

*Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016)). Under *McDonnell Douglas*, a plaintiff "must first set forth a prima facie case of race-based discrimination." *Rogers*, 827 F.3d at 408. If the plaintiff succeeds, "the burden of production shifts to the employer to articular some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (internal quotation omitted). "If the employer satisfies this burden, the presumption of discrimination drops out of the picture, and the employee must offer some evidence that" the employer's reason was pretextual, or that the plaintiff's protected characteristic was a "motivating factor" for the alleged discrimination. *Id.* (citations and internal quotations omitted).

To establish a prima facie racial discrimination claim, Washington must demonstrate that (1) "she is a member of a protected class;" (2) "she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013). The parties dispute only whether Washington "was treated less favorably than other similarly situated employees outside her class" under the fourth element.[3] *See* ECF Nos. 26 at 16; 31 at 14.

"[T]he Fifth Circuit defines 'similarly situated' narrowly." *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 735 (S.D. Tex. 2014) (citation omitted). "Similarly situated individuals must be 'nearly identical' and must fall outside the plaintiff's protective class." *Id.* at 735–36 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). "Where different decision makers or supervisors are involved, their decisions are rarely 'similarly situated' in relevant ways for establishing a prima facie case." *Id.* at 736 (citation omitted).

Washington has identified no employees similarly situated to her. Each of the alleged similarly situated employees are not "nearly

---

[3] The evidence establishes—and Washington does not dispute—that Washington was not replaced by someone outside her protected class. *See* ECF No. 27-7 at 363, 377.

6

identical" to Washington because they held different positions, worked in different departments, and—notably—reported to different supervisors. ECF No. 27-7 at 363. Washington's only evidence to the contrary is her own deposition testimony. *See* ECF Nos. 31 at 14–15; 27-1 at 21. While her testimony could be sufficient to preclude summary judgment, no reasonable jury could return a verdict in her favor because her testimony is vague and conclusory. *See Guzman*, 18 F.4th at 160–61. For example, when asked how much the other employees earned before and after their alleged promotions, to whom the other employees reported, and what the other employees job responsibilities were, Washington answered, "I don't know." *See* ECF No. 27-1 at 21–22, 45. Also, in her response to NOV's motion for summary judgment, Washington lists several ways that NOV allegedly discriminated against her because of her race. *See* ECF No. 31 at 13–15. But she merely concludes that other white employees were not treated similarly without pointing to any corroborating evidence. *See id.*; ECF No. 27-1 at 45–46, 51–52.

Because there is no genuine issue of material fact indicating that Washington "was treated less favorably than other similarly situated employees outside her class," *Haire*, 719 F.3d at 363, the Court grants summary judgment for NOV on Washington's § 1981 racial discrimination claim.

### C. Retaliation

The Court considers "retaliation claims based on Title VII and 42 U.S.C. § 1981 under the same rubric of analysis" described above. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (internal quotation and brackets omitted). A prima facie retaliation claim "under either Title VII or § 1981 requires that a plaintiff show that: (1) [s]he engaged in an activity protected by Title VII; (2) [s]he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Id.* at 407–08 (internal quotation omitted). NOV contends that Washington failed to establish the first and third elements because she did not engage in a protected activity, and even if she did, she failed to establish a causal

7

link between the protected activity and her employment termination. ECF No. 26 at 19–24.

"Protected activities consist of (1) opposing any practice deemed an unlawful employment practice by [T]itle VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under [T]itle VII (the 'participation clause')." *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998)). The participation clause is inapplicable here because Washington was not making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII when she was fired. So the question is whether Washington satisfied the opposition clause, which requires that she "had an objectively reasonable belief that [NOV] was engaged in unlawful employment practices." *Id.* at 296–97 (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000)).

Washington asserts that her four complaints to NOV's human resources department were presented in good faith and are therefore protected activities. Washington's first two complaints—the first alleging that Wojick yelled at her and the second complaining about the cancelation of her training—mention nothing about unlawful employment practices. *See* ECF No. 27-1 at 30–32. That is, Washington's first two complaints do not allege that these actions were done with racial animus. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."). Washington appears to concede this point in her response to NOV's motion for summary judgment, given that Washington outright ignores the contents of her first two complaints. *See* ECF No. 31 at 18–19.

The third complaint states that Wojcik was strictly supervising Washington in ways that non-black employees were not. ECF No. 31 at 19. Washington points to the fact that she was required to share an office with a white employee for a period of time, and that NOV required her to move offices next to an employee she alleges was "discriminatory

8

towards black women" to support her argument. *Id.* But Washington admitted that other non-black employees were also required to move buildings and share offices after the VERP. ECF No. 27-1 at 26–30. Additionally, Washington's office was intended to accommodate up to three people. ECF No. 27-8 at 381.

As for the allegedly discriminatory coworker, nowhere in Washington's third complaint did she allege that the coworker made discriminatory comments to her. *See id.* at 33. Her complaint merely concluded that the coworker was discriminatory because he did not speak to her. It was not until her deposition testimony that Washington asserted for the first time that the coworker made racist comments. Accordingly, based on the information presented to NOV in Washington's third complaint, it is objectively unreasonable to believe that NOV's decision to move Washington to an office near this coworker constitutes a Title VII violation.

Washington's fourth complaint took issue with the change in her job responsibilities without an increase in pay. *See* ECF No. 27-1 at 39–40. But Washington conceded that the change in her job responsibilities "[wa]s not wrong"—the real issue was that she did not receive a raise when her "white counterparts got promotions." *Id.* at 39. When asked, however, what her white counterparts' job titles and corresponding pay increases were, Washington stated that she did not know. *See* ECF No. 27-1 at 21–22, 45. She also conceded that NOV tried to keep Washington as an employee by creating a new position for her "to see how she would perform" instead of immediately firing her when her relationship with Wojick turned sour. ECF No. 27-3 at 244.

Washington counters that she was given the new position to force her to quit because the new position involved manual labor. *See* ECF Nos. 33-4 at 53; 31 at 19–20. But, as discussed above, Washington agreed that a change in job responsibilities is a "part of business," and she has no evidence to support her assertion that she was not given a raise while her white counterparts' pay increased when their job responsibilities changed after the VERP. *See* ECF No. 27-1 at 21–22, 39, 45. She therefore had no objectively reasonable belief that NOV violated Title

9

VII when NOV changed her job responsibilities without increasing her pay.

Washington's last-ditch effort to establish her prima facie retaliation claim is based on her first EEOC charge filed weeks before she was fired. ECF No. 31 at 20–21. NOV contends that Washington cannot establish the causation element of her claim. The causation standard for a Title VII retaliation claim is higher than a Title VII discrimination claim. *Univ. of TX Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361–62 (2013). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* at 352; *see also Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

Washington asserts that testimony from a human resources manager states that Washington's EEOC charge "was taken more seriously than another employee's and was the only one NOV cared about" and was thus the but-for cause of her firing. ECF No. 31 at 21; *see* ECF No. 27-5 at 323. But that is not what the human resources manager's testimony says. The testimony states that NOV's CEO wanted to discuss Washington's EEOC charge, but there is no indication that it was "the only one NOV cared about." ECF No. 31 at 21. Additionally, Washington adduces no evidence that Pratt—the NOV Vice President who ultimately decided to fire Washington—knew about the EEOC charge or that Pratt harbored any discriminatory animus towards Washington.[4] *See* ECF No. 27-6 at 360–61. In fact, Pratt discussed whether to fire Washington with NOV's Senior Human Resources Director, Director of Human Resources, and in-house labor counsel, all of whom are black women. *Id.*

---

[4] To the extent Washington asserts a "cat's paw" theory of causation—that NOV's Director of Human Resources harbored discriminatory animus towards Washington, knew about the EEOC charge, and influenced Pratt to fire Washington because of her animus—no evidence supports the theory. *See* ECF No. 31 at 21; *Zamora*, 798 F.3d at 332 (discussing the "cat's paw" theory of causation in Title VII retaliation claims). The Director of Human Resources was a part of the same protected group as Washington—namely, black women—and no evidence suggests that the Director influenced Pratt because of animus towards her own protected group.

Because Washington failed to establish that any one of her four complaints constituted a protected activity and that her EEOC charge was the but-for cause of her termination, the Court grants summary judgment for NOV on Washington's retaliation claim.

### D. Intentional Infliction of Emotional Distress

Washington asserts an IIED claim against NOV for the same conduct supporting her Title VII and § 1981 claims. Under Texas law, however, an IIED claim "is a gap-filler tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quotation omitted); *see also Hughes Training, Inc. v. Cook*, 148 F. Supp. 2d 737, 745 (N.D. Tex. 2000) (Mahon, J.), *aff'd*, 254 F.3d 588 (5th Cir. 2001) ("Only in the most unusual of employment cases does the conduct move out of the realm of an ordinary employment dispute and into the classification of extreme and outrageous conduct.").[5] Because Washington's IIED claim is based on the same conduct as her Title VII and § 1981 claims, statutory remedies are available to her.[6] Washington's IIED claim therefore fails as a matter of law. *See Gonzales v. Pan Am. Lab'ys, L.L.C.*, No. 3:14-cv-2787-L, 2015 WL 5731289, at *3 (N.D. Tex. Sept. 29, 2015) (Lindsay, J.).

---

[5] *See, e.g.*, *Benningfield v. City of Hous.*, 157 F.3d 369, 379 (5th Cir. 1998) (requiring an employee to work under a supervisor she disliked does not ordinarily constitute outrageous conduct); *Humphreys v. Med. Towers, Ltd.*, 893 F. Supp. 672, 681 (S.D. Tex. 1995), *aff'd*, 100 F.3d 952 (5th Cir. 1996) (holding that Defendant encouraging coworkers to be insubordinate toward Plaintiff, using profanity toward Plaintiff, telling Plaintiff she was incompetent, and treating Plaintiff with blatant hostility was not extreme and outrageous conduct); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (holding that an employer's decision to revise a job description or to change the nature or compensation for certain positions was not extreme and outrageous conduct); *Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993) (holding that firing an employee for allegedly possessing incriminating information and having a security guard escort employee off the premises in the presence of coworkers was not extreme and outrageous conduct).

[6] Tellingly, Washington neglected to address NOV's argument to this point in her response to NOV's motion for summary judgment. *Compare* ECF Nos. 27 and 31.

## CONCLUSION

The Court briefly pauses to address the human resources manager's deeply troubling testimony. *See* ECF No. 33-4 at 62. The testimony recounts incidents where various NOV employees allegedly used racial slurs in reference to black employees, among other despicable conduct. *See, e.g.*, ECF No. 33-4 at 62. Washington accordingly contends that NOV "has a pervasive culture of workplace racial discrimination and harassment." ECF No. 31 at 9. While the testimony is disconcerting, it is insufficient to create a triable issue of fact because Washington failed to establish a prima facie § 1981 racial discrimination claim or a Title VII retaliation claim for reasons that the testimony does not cure. Specifically, racist remarks do nothing to establish that any of the employees Washington identified were similarly situated to her. Nor do the remarks show that Washington engaged in a protected activity when she filed her four complaints to NOV's human resources department, or that Washington's EEOC charge was the but-for cause of her termination.

In sum, Washington failed sue within the 90-day deadline provided by her EEOC right-to-sue letter, her Title VII racial and sex discrimination claims are time-barred. Her § 1981 gender discrimination claim fails as a matter of law because there is no cause of action for gender discrimination under § 1981. NOV is entitled to summary judgment on Washington's § 1981 racial discrimination claim because Washington did establish that she was treated less favorably than a similarly situated employee. Likewise, summary judgment for NOV on Washington's Title VII retaliation claim is appropriate because Washington's four complaints to human resources were not "protected activities," and she did not establish that her first EEOC charge was the but-for cause of her termination. Finally, Washington's IIED claim fails as a matter of law because she had other statutory remedies available to her under Title VII and § 1981.

Accordingly, the Court **GRANTS** NOV's motion for summary judgment. ECF No. 25.

**SO ORDERED** on this **7th day** of **October 2022.**

_____
**MARK T. PITTMAN**
**UNITED STATES DISTRICT JUDGE**